IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF MISSISSIPPI
ABERDEEN DIVISION

PEGGY HURLEY                                                                              PLAINTIFF

V.                                                         CIVIL ACTION NO. 1:14-CV-177-SA-DAS

TUPELO PUBLIC SCHOOL DISTRICT,
LYNNE H. ROGERS, and
JUDY STARK                                                                              DEFENDANTS

MEMORANDUM OPINION

Plaintiff Hurley filed her Complaint [1] in this Court on September 26, 2014 pursuant to 42 U.S.C. §1983, alleging that she was discriminated against by her employer, the Tupelo Public School District (TPSD), because she is gay. Specifically, Plaintiff alleges that because of her sexual orientation, her pay was cut, she was not considered for open positions in the District, and the Defendants created and subjected her to a hostile work environment.[1] Plaintiff also brings a state law claim against individual defendants Rogers and Stark for intentional infliction of emotional distress, and seeks punitive damages. Finally, Plaintiff seeks prospective injunctive relief from TPSD, specifically that she be allowed to receive manager training and be fairly considered for manager positions. This matter now comes before the Court on the Defendants' Motion for Summary Judgment [35] on all of Plaintiff's claims. The Plaintiff responded [39] and the Defendants replied [41], making this motion ripe for review.

---

[1] In her Response [39] to the instant Motion for Summary Judgment [35] Plaintiff asserts, for the first time, a claim for constructive discharge. Because she did not amend her complaint to include a claim for constructive discharge, and "[a] claim which is not raised in the complaint but, rather, is raised only in response to a motion for summary judgment is not properly before the court," the Court will not consider any claim for constructive discharge here. *Roberts v. Lubrizol Corp.*, 582 F. App'x 455, 461 (5th Cir. 2014) (quoting *Cutrera v. Bd. of Supervisors of La. State Univ.,* 429 F.3d 108, 113 (5th Cir. 2005); *see also Green v. JP Morgan Chase Bank, N.A.,* 562 F. App'x. 238, 240 (5th Cir. 2014).

*Factual and Procedural Background*

In November of 2011, the TPSD hired Hurley as cafeteria manager of the Church Street School. At that time, Church Street School housed TPSD's alternative school program and did not have a full service cafeteria. Main dishes were prepared at another cafeteria and delivered to Church Street School. Hurley, supervising one employee, was responsible for preparing side dishes and other food items, assembling the meals, and serving around sixty students each day. Hurley reported to Lynne Rogers, the Director of Food Services for TPSD. Hurley's salary was $17,964.

In June of 2012, TPSD sent Hurley, along with other district cafeteria managers, to a one-week training and certification course in Jackson, Mississippi. Hurley completed the program and received the certification. Hurley's partner, now spouse, Monica Bristow traveled to Jackson with Hurley.

After the training session in Jackson, Stark and other employees that attended the training reported to Rogers about Hurley's behavior during the training week. Stark reported that Hurley behaved inappropriately in and out of the classroom by using profanity and was generally unprofessional. Stark and others further reported that after class Hurley drank excessively in the hotel bar and used profanity. Rogers also learned that Hurley was seen kissing and being openly affectionate with her partner in the hotel. According to Rogers, she was aware that Hurley was gay at this time. [2]

The TPSD decided to close the Church Street School facility after the 2012-2013 school year. As a result, Hurley's position was eliminated. Due to a declining number of students prior to the closing, Hurley began taking on additional responsibilities at the Lawndale and Joyner

---

[2] In her deposition, Rogers contradicts this statement taken from her sworn affidavit. In her deposition, Rogers states that she heard about inappropriate behavior by Hurley at the training in Jackson, but did not learn about the open affection between Hurley and her partner at the training until, perhaps, after this case was filed.

cafeterias, which did not have cafeteria managers of their own at that time. Hurley made bank deposits and assisted with record keeping including filling out the "red book".[3] During this time, Hurley talked with Rogers about continuing her employment in a different position after the Church Street School closed. Rogers anticipated that a float manager position would be created and available the following school year, but the School Board would not make a decision about that position until later in the summer.

Starting in June of 2013, Hurley worked as a cafeteria cashier in the summer food service program at Tupelo Middle School. Dorothy Lattimore was the cafeteria manager. The summer food service program served a number of different groups including the Tupelo Middle School basketball team, and the Tupelo Boys and Girls Club.

Rogers met with Hurley twice on June 28, 2013, and their impressions of these meetings are very different. According to Hurley, Rogers accused her of being racist and of trying to turn another employee gay. According to Rogers, several employees complained about Hurley's unprofessional conduct, use of profanity, and other inappropriate comments, and she met with Hurley to discuss legitimate employment related issues and to issue her a verbal warning. Both Hurley and Rogers concede that at least one topic of discussion at these two meetings was a complaint from TPSD employee Dorothy Lattimore. According to Lattimore, Hurley invited her over to swim in her pool and have some fun, and asked her if she knew anyone that Hurley could sleep with because her partner was out of town. Lattimore also reported that other employees asked her if Hurley was trying to "turn her out". Rogers issued a verbal warning to Hurley, accompanied by a performance correction notice, which Hurley signed. The correction notice cites Hurley for disrespectful conduct, use of profanity, unprofessional conduct, and references

---

[3] The "red book" is a production record used to track and document different aspects of inventory and production on a daily basis.

the complaint by Lattimore.[4] Hurley alleges that up until these meetings, she had a positive working relationship with the TPSD, but that after this time, her work life took a dramatic turn for the worse. Hurley attributes this shift to her belief that this was the first time that Rogers learned that she was gay.

On August 2, 2013, the School Board approved Hurley for the float manager position. Rogers and Hurley discussed the potential for Hurley to gain experience in training as a float manager that would prepare her to manage a full service cafeteria in a larger school. In particular, Hurley needed experience with truck ordering. According to Rogers, the float manager position paid less than the Church Street position, $17,280 instead of $17,964, but did not require management of a particular cafeteria, and involved serving fewer students.[5] As float manager, Hurley worked out of the Tupelo Middle School cafeteria but traveled to the Fillmore Center to deliver and serve meals. The Fillmore Center did not have its own cafeteria. Hurley was responsible for traveling back and forth from the Middle School to deliver and serve breakfast and lunch at Fillmore, after which she would finish out her day at the Middle School counting that day's money and filling out the Middle School's red book.

During the spring of 2014 Hurley attended another certification and training program with other managers, this time at Itawamba Community College. This class met in the evenings after working hours. Around this same time, Judy Stark was promoted to manager of the Tupelo Middle School cafeteria. According to Rogers, she again received negative reports about Hurley's behavior during the training sessions, specifically that Hurley was abrupt and unprofessional in the classroom, and that she made statements to the instructor about bringing

---

[4] According to Rogers' sworn affidavit [35-1], the two also discussed complaints about Hurley from the Tupelo Boys and Girls Club and the Tupelo Middle School basketball coach, as well as complaints from TPSD employees Shasmeca Middlebrooks and Patricia Fears.
[5] Hurley alleges that the new float manager position actually involved more work and responsibility, not less.

4

beer to the sessions. According to Hurley, she was only joking about getting beer and pizza in class. Rogers talked to Hurley about her behavior in the class but did not issue any formal warning or reprimand.

Hurley injured her shoulder while transporting food to the Fillmore Center on February 14, 2014, and attempting to operate a heavy metal gate. Hurley's injury eventually required surgery, and her doctor placed her on weight lift restrictions. Hurley missed some work as a result of her injury, but was requested to, and did schedule her appointments around work hours when possible. According to Hurley, she was repeatedly expected to perform duties outside her work restrictions, such as lifting heavy boxes, in spite of written orders to the contrary.

In April of 2014, Rogers requested a work performance update on Hurley from Judy Stark, who was by now the Tupelo Middle School cafeteria manager. Rogers and her assistant, Suzy Parker, met with Hurley on April 25, 2014 to discuss issues from this performance update. Rogers issued a written agenda containing six specific issues for Hurley to address.[6] Most of the issues involved Hurley's working relationship with Stark. Rogers, Parker, and Hurley signed this agenda.

A devastating tornado struck the city of Tupelo and the surrounding area on April 28, 2014. Many homes and businesses were damaged or destroyed in the storm. Hurley's home sustained substantial damage. Hurley missed some work directly after the tornado. Because she

---

[6] Items of Discussion with Peggy Hurley on April 25, 2014: 1. Production books are records to be shared with Judy [Stark] at any time she needs to view them to assist in cafeteria operations. 2. If Judy [Stark] has someone in her office, please do not enter unless Judy motions for you to come in or she opens the door for you. A serious conversation may be taking place. 3. When Judy is out in the kitchen and having discussion with a worker on a procedure or recipe, do not voice your difference of opinion in front of the worker, hold your ideas and discuss them with Judy in her office. 4. When you need to speak to someone in the kitchen, do not use a loud tone of voice and call for them to come where you are in the kitchen or your office, go to the employee and speak to them to get you answer, this shows respect to the employee. 5. When you are at work at TMS, your work is accomplished thru the TMS staff. If there is an issue with an employee, speak to Judy and ask her to speak to the employee about the problem. Do not criticize the employee of their work, speak to Jury about the problem. 6. Always remember to communicate with employees in a way that respects them better than you want to be treated. Rather than telling a person to do something, ask them to do something. Remember please and thank you.

had used all of her sick days for her shoulder injury and related doctor's visits, Hurley took unpaid time off under the Family Medical Leave Act (FMLA). Hurley alleges that she was never told that she was using her sick leave to attend medical appointments for her shoulder.

Hurley returned to work for the 2014-2015 school year, again as float manager, and attended training sessions on August 1, 2014, and August 6, 2014. On August 14, 2014, Rogers and Tupelo Middle School Principal, Dr. Luse, met with Hurley and issued a written warning to her. According to Rogers, the written warning came as a result of Hurley's refusal to follow Stark's instructions. According to Stark and Rogers, Stark and Tupelo Middle School Assistant Principal Cossey instructed Hurley to make phone calls to school parents whose children had unpaid balances with the cafeteria. According to Stark, Hurley refused to make the calls and told Stark that she (Stark) was not her boss, and that she only took orders from Rogers. According to Hurley, she never made the calls because she was never given a list to call from. Among other things, the written warning also cites Hurley for using profanity, being disrespectful, and making negative comments regarding work assignments.

Hurley was again on FMLA leave beginning August 15, 2014 and filed this suit on August 26, 2014. Hurley did not return to work until September 2, 2014. On September 3, 2014, Hurley left work early and requested additional FMLA leave. According to Stark, Hurley was in a good mood when she arrived for work that morning, but was pale, sweating, and distressed when she left. Hurley never returned to work at TPSD. Hurley was released from FMLA leave on October 7, 2014 to return to full duty. Hurley did not return to work and resigned by letter on October 29, 2014.

Hurley alleges that Stark and Rogers constantly criticized and reprimanded her for behavior that was common and undisciplined among the other TPSD employees. In addition to

the formal disciplinary actions outlined above, Hurley was informally reprimanded for other issues including, her dress, using profanity, talking loudly, joking, and generally being unprofessional. Hurley also alleges that Rogers intentionally prevented Hurley from attending management meetings by misleading her about the time and location of meetings. According to Hurley, Rogers and Stark worked together to give Hurley conflicting information and work instructions for the express purpose of catching her in violation of their orders. On another occasion, Rogers reprimanded Hurley based on a complaint by TPSD employee Minnie Fears. According to Rogers, Hurley told Fears "she did not like her, never had, and never will." According to Hurley, Rogers had specifically instructed her to watch and help Fears follow recipes, and Hurley's confrontations with Fears were a result of Fears' inability or unwillingness to following directions and recipes.

Hurley alleges that Rogers and Stark singled her out and held her to a different standard than other employees because they did not like her because she is gay. Rogers contends that any reprimands or other disciplinary actions taken against Hurley, which never rose to the level of suspension or dismissal, were a direct result of Hurley's own behavior. The Defendants now seek summary judgment on all of the Plaintiff's claims.

*Summary Judgment Standard*

Federal Rule of Civil Procedure 56 governs summary judgment. Summary judgment is warranted when the evidence reveals no genuine dispute regarding any material fact, and the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(a). The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element

7

essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

The moving party "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact." *Id*. at 323, 106 S. Ct. 2548. The nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id*. at 324, 106 S. Ct. 2548 (citation omitted). In reviewing the evidence, factual controversies are to be resolved in favor of the non-movant, "but only when . . . both parties have submitted evidence of contradictory facts." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc). When such contradictory facts exist, the Court may "not make credibility determinations or weigh the evidence." *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150, 120 S. Ct. 2097, 147 L. Ed. 2d 105 (2000). Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments are not an adequate substitute for specific facts showing a genuine issue for trial. *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1997); *Little*, 37 F.3d at 1075.

*Equal Protection Claim*

Although the Supreme Court has not recognized sexual orientation as a suspect classification, a State violates the Equal Protection Clause by creating a "disadvantage for homosexuals" without a "rational relationship to a legitimate government aim." *Johnson v. Johnson*, 385 F.3d 503, 532 (5th Cir. 2004) (citing *Romer v. Evans*, 517 U.S. 620, 631–32, 116 S. Ct. 1620, 134 L. Ed. 2d 855 (1996)).[7] In this case, the Defendants do not argue that any

---

[7] *See also Gill v. Devlin*, 867 F. Supp. 2d 849, 856 (N.D. Tex. 2012) (holding discrimination in employment on the basis of sexual orientation can be a violation of the Equal Protection Clause) (citing *Johnson*, 385 F.3d at 530; *Pratt*

legitimate government aim exists because they contend that they did not discriminate against or create a disadvantage for Hurley in the first place.

"In order to establish a valid equal protection claim, more than simply disproportionate impact must be shown." *United States v. Galloway*, 951 F.2d 64, 65 (5th Cir. 1992) (citing *Personnel Adm'r v. Feeney*, 442 U.S. 256, 272, 99 S. Ct. 2282, 2292, 60 L. Ed. 2d 870 (1979)). Thus, to provide a basis for her claim, Hurley must demonstrate discriminatory purpose. *James v. Hertzog*, 415 F. App'x 530, 532 (5th Cir. 2011) (citing *Williams v. Bramer*, 180 F.3d 699, 705 (5th Cir. 1999)). "Discriminatory purpose in an equal protection context implies that the decision maker selected a particular course of action at least in part because of, and not simply in spite of, the adverse impact it would have on an identifiable group." *Galloway*, 951 F.2d at 65 (citing *Feeney,* 442 U.S. at 279, 99 S. Ct. 2282).

Because Section 1983 and Title VII are "parallel causes of action," the "inquiry into intentional discrimination in public employment is essentially the same for individual actions brought under sections 1981 and 1983, and Title VII." *Lauderdale v. Texas Dep't of Criminal Justice, Institutional Div.*, 512 F.3d 157, 166 (5th Cir. 2007) (quoting *Cervantez v. Bexar County Civil Serv. Comm'n*, 99 F.3d 730, 734 (5th Cir. 1996)); *Wallace v. Tex. Tech Univ.*, 80 F.3d 1042, 1047 (5th Cir. 1996) (citing *Briggs v. Anderson*, 796 F.2d 1009, 1019–21 (8th Cir. 1986)).

Therefore, to succeed on a claim for intentional discrimination under Section 1983, Plaintiff must first prove a *prima facie* case of discrimination either through direct evidence of discriminatory motive, or circumstantial evidence under the *McDonnell Douglas* burden-shifting framework. *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 36 L. Ed. 2d

---

*v. Indian River Cent. Sch. Dist.,* 803 F. Supp. 2d 135, 152 (N.D. N.Y. 2011); *Massey v. Banning Unified Sch. Dist.,* 256 F. Supp. 2d 1090, 1094 (C.D. Cal. 2003)). *Compare E.E.O.C. v. Boh Bros. Const. Co.*, 731 F.3d 444, 456 (5th Cir. 2013) (holding a plaintiff may establish a sexual harassment claim in an employment context with evidence of sex-stereotyping).

668 (1973); *Roberts v. Lubrizol Corp.*, 582 F. App'x 455, 458 (5th Cir. 2014); *Wallace*, 80 F.3d at 1047. Placed in the context of summary judgment, the plaintiff can survive summary judgment by "producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 897 (5th Cir. 2002).

Direct evidence is "evidence that, if believed, proves the fact of discriminatory animus without inference or presumption." *Id.* (citing *Mooney v. Aramco Services Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995)). In the instant case, Hurley has not provided any statements or other evidence of discrimination, nor does she point to any in her pleadings, that indicate prohibited hostility that proves her case of discrimination without "inference or presumption." *Id*.

Absent direct evidence of discriminatory motive, to establish a *prima facie* case of intentional discrimination under Title VII, a plaintiff is required to show: (1) she is a member of a protected class; (2) she was qualified for the position she sought; (3) she suffered an adverse employment action; and (4) others similarly situated but outside the protected class were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817.

If a plaintiff establishes a presumption of intentional discrimination by establishing a *prima facie* case, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its actions. *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097; *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 254–56, 101 S. Ct. 1089, 67 L. Ed. 2d 207 (1981). The burden on the employer "is one of production, not persuasion; it 'can involve no credibility assessment.'" *Reeves*, 530 U.S. at 142, 120 S. Ct. 2097 (quoting *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 509, 113 S. Ct. 2742, 125 L. Ed. 2d 407 (1993)). If the employer sustains its burden, the *prima facie* case is dissolved, and the burden shifts back to the plaintiff to establish

either: (1) that the employer's proffered reason is not true but is instead a pretext for discrimination; or (2) that the employer's reason, while true, is not the only reason for its conduct, and another "motivating factor" is the plaintiff's protected characteristic. *Alvarado v. Texas Rangers*, 492 F.3d 605, 611 (5th Cir. 2007) (citing *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004)).

Finally, the Court must review all of the presented evidence, "as a whole," and "disregard all evidence favorable to the moving party that the jury is not required to believe." *See Stennett v. Tupelo Pub. Sch. Dist.*, No. 13-60783, 2015 WL 4569205, at *7 (5th Cir. July 30, 2015) (citing *Reeves*, 530 U.S. at 151, 120 S. Ct. 2097). As stated above, a plaintiff can survive summary judgment by "producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad*, 309 F.3d at 897.

*Adverse Employment Decision Claims*

For purposes of establishing a *prima facie* case of discrimination under Section 1983, Hurley has adequately established that she is a member of an identifiable class, satisfying the first prong of the *prima facie* case inquiry. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817; *Galloway*, 951 F.2d at 65.

Hurley alleges claims of discrimination based on her sexual orientation under two different categories of adverse employment decisions. First, she alleges that her pay was cut when she moved from her position as manager at Church Street to become a float manager. Second, Hurley alleges that she was not hired, or was not considered at all, for other positions within the TPSD.

11

*Float Manager*

With respect to the pay cut, as stated above, Hurley has satisfied the first prong in the *prima facie* case inquiry. In addition, because Hurley was ultimately hired and approved for the float manager position, she was qualified for the position, thus satisfying the second prong. Because a reduction in pay is sufficient to constitute an adverse employment action, Hurley has also established the third prong of her *prima facie* case. *Brandon v. Sage Corp.*, 61 F. Supp. 3d 632, 644 (W.D. Tex. 2014). In order to satisfy the fourth and final prong of her *prima facie* case related to her pay cut, Hurley must bring forth evidence that demonstrates others similarly situated, but outside her class, were treated more favorably. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817. There is no evidence in the record to support this finding, nor has Hurley alleged more favorable treatment of a similarly situated employee with respect to her pay cut. Thus, Hurley has failed to establish a *prima facie* case of discrimination on this issue, and therefore has failed to establish a claim for intentional discrimination under Section 1983 and the Equal Protection Clause with regard to her pay cut.

Hurley's other discrimination claims relate to her allegations that she was not interviewed or fairly considered for open positions within the TPSD because of her sexual orientation. For purposes of this section, the Court notes that a failure to promote or hire "can constitute adverse employment actions for the purposes of establishing a *prima facie* case under Title VII." *Mims v. Carrier Corp.*, 88 F. Supp. 2d 706, 719 (E.D. Tex. 2000) (citing *Mattern v. Eastman Kodak Co.*, 104 F.3d 702, 707 (5th Cir. 1997)). In this context, "[u]ltimate employment decisions include acts such as hiring, promoting, compensating, and firing." *Id*. (citing *Dollis v. Rubin*, 77 F.3d 777, 782 (5th Cir. 1995)).

*Milam Elementary*

In August of 2012, a kitchen manager position was open at Milam Elementary. Hurley admits that she was interviewed for this position, and although she was not hired, she does not allege that she was not fairly considered. Hurley does allege that after she was interviewed for Milam Elementary, and after Rogers learned about her sexual orientation, she expressed interest in open positions but was never interviewed or considered. In particular, Hurley alleges that she was qualified, but not fairly considered for kitchen manager positions at Rankin Street School, Lawndale Elementary, and Thomas Street School.

*Rankin Street School*

In August 2013, the position of kitchen manager was open at Rankin Street School. Rankin Street School is considered by TPSD as a small site.[8] Hurley alleges that she expressed interest in the position but was not considered. Shasmeca Middlebrooks was ultimately hired for that position. Based on the information in the record, Hurley's qualifications were similar to Middlebrooks', although Middlebrooks worked for TPSD longer. Middlebrooks was also ServSafe certified, which was a requirement for the position. Hurley alleges that Rogers intentionally sent Middlebrooks to ServSafe training, and prevented Hurley from re-certification.[9] The salary for the Rankin Street job was $17,280, the same amount Hurley earned as float manager. Considering this detail and Hurley's title of cafeteria manager in the float manager position, there is no evidence that the Rankin Street job would have been a promotion for Hurley, and in turn, that the TPSD's failure to consider Hurley was an adverse employment

---

[8] TPSD categorizes cafeterias as small, medium, or large sites. There are also sites that use satellite managers to prepare food at a full-service cafeteria and then transport and serve meals at a site without a cafeteria. Hurley was a cafeteria manager while at Church Street, and in the float manager position. At the time Hurley worked there, Church Street was considered a small site.

[9] Hurley was ServSafe certified, but her certification expired at some point and she was not re-certified. According to Hurley, the TPSD unilaterally controls who is allowed to attend trainings and certification programs.

action.[10] For this reason, Hurley is unable to establish a *prima facie* case of discrimination on this claim. *McDonnell Douglas*, 411 U.S. at 802, 93 S. Ct. 1817.

*Lawndale Elementary School*

The next position Hurley alleges she was not considered for is the cafeteria manager at Lawndale Elementary, which was open in October 2013. Lawndale is considered a medium sized site. Shianna Bean was ultimately hired for that position. The record clearly demonstrates, and Hurley concedes, that she needed additional experience and training in order to qualify for a management position at a larger site. Based on these facts, Hurley has failed to establish the second prong of her *prima facie* case, that she was qualified for the position. *Id*.

*Thomas Street School*

The final position Hurley claims she was not considered for is cafeteria manager at Thomas Street School, which was filled in May of 2014. Thomas Street is considered a small site. Felicia Gordon was ultimately hired as cafeteria manager at Thomas Street. As with Rankin Street, the salary for the Thomas Street job was $17,280, the same amount Hurley earned as float manager. Considering this detail and Hurley's title of cafeteria manager in the float manager position, there is no evidence in the record that the Rankin Street job would have been a promotion for Hurley, and that the TPSD's failure to consider Hurley was an adverse employment action.[11] For this reason, Hurley has not established a *prima facie* case of discrimination on this claim. *Id*.

---

[10] Hurley has not brought forth any proof, or alleged, that this position would have been a promotion for her. In order to create a genuine disputes of material fact as to this issue, at least some evidence is required. *See Alvarado*, 492 F.3d at 615 (holding that genuine issue of material fact existed for summary judgment purposes with respect to question of adverse employment action related to a failure to promote with eight different explicit evidentiary points for consideration).

[11] Hurley has not brought forth any proof, or alleged, that this position would have been a promotion for her. In order to create a genuine disputes of material fact as to this issue, at least some evidence is required. *See Alvarado*, 492 F.3d at 615 (holding that genuine issue of material fact existed for summary judgment purposes with respect to

*§ 1983 Claims*

Although the Court finds that Hurley failed to establish a *prima facie* case for her discrimination claims when analyzed on a case by case basis, recent Fifth Circuit precedent cautions against granting of summary judgment in favor of the Defendants without a review of the presented evidence "as a whole." *See Stennett v. Tupelo Pub. Sch. Dist.*, No. 13-60783, 2015 WL 4569205, at *7 (5th Cir. July 30, 2015) (citing *Reeves*, 530 U.S. at 151, 120 S. Ct. 2097).

When evaluating a motion under Rule 56, the Court "must view the evidence and all reasonable inferences from that evidence in the light most favorable to the nonmoving party, and all reasonable doubts about the facts are resolved in favor of the nonmoving litigant." *Id.* (citing *Tolan v. Cotton*, 134 S. Ct. 1861, 1866, 188 L. Ed. 2d 895 (2014)). "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). "Thus, although the court should review the record as a whole, it must disregard all evidence favorable to the moving party that the jury is not required to believe." *Stennett*, 2015 WL 4569205 *6 (citing *Reeves,* 530 U.S. at 151, 120 S. Ct. 2097)). As stated above, a plaintiff can survive summary judgment by "producing evidence that creates a jury issue as to the employer's discriminatory animus or the falsity of the employer's legitimate nondiscriminatory explanation." *Sandstad*, 309 F.3d at 897.

The Court finds that although there are some parallels between Hurley's case, and the plaintiff's case in *Stennett*, i.e. both were denied interviews for multiple positions; the plaintiff in *Stennett* established strong *prima facie* cases relative to each adverse action, which, when viewed *along with* other evidence of discrimination, was enough to establish a genuine issue of material

---

question of adverse employment action related to a failure to promote with eight different explicit evidentiary points for consideration).

15

fact as to pretext. Hurley failed to establish a *prima facie* case for any of the actions she alleges were adverse. Thus, the analysis of Hurley's claims turns on the failure to establish a *prima facie* case, and never reaches the pretext analysis.

The Court finds that Hurley has failed to establish a *prima facie* case of discrimination, and even viewing the evidence "as a whole," has failed to create a genuine issue of material fact as to any of the essential elements of her claims. *See Stennett*, 2015 WL 4569205 *7; *Sandstad*, 309 F.3d at 897.

*Hostile Work Environment*

After a thorough review, the Court has not found any Fifth Circuit case law holding that a Section 1983 claim based on a violation of equal protection rights (as opposed to a Title VII claim) may be brought for a creation of a hostile work environment due to sexual orientation. *See Fields v. Stephen F. Austin State Univ.*, 611 F. App'x 830, 833 (5th Cir. 2015) (finding no Fifth Circuit case law holding that a Section 1983 claim based on a violation of equal protection rights (as opposed to a Title VII claim) may be brought for creation of a hostile work environment due to race). The Fifth Circuit has held "sexual harassment in public employment violate[s] the Equal Protection Clause of the Fourteenth Amendment and is therefore actionable under § 1983." *Id*. (citing *Lauderdale*, 512 F.3d at 166). And, in *Oncale v. Sundowner*, the U.S. Supreme Court reversed the Fifth Circuit's holding that same-sex harassment was not actionable and held that Title VII does provide a cause of action for same-sex harassment. *Oncale v. Sundowner Offshore Servs.*, 523 U.S. 75, 81, 118 S. Ct. 998, 140 L. Ed. 2d 201 (1998). However, the Plaintiff in this case has not alleged a claim for sexual harassment, but instead alleges a claim for hostile work environment based on her sexual orientation.

Even if the Fifth Circuit were to explicitly recognize a claim for relief based on equal protection and hostile work environment due to sexual orientation, the conduct alleged by Hurley simply does not rise to the level of "severe and pervasive" required to meet the threshold requirements of establishing a *prima facie* case of hostile work environment. *Fields*, 611 F. App'x at 833; *Ramsey,* 286 F.3d at 268 (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21, 114 S. Ct. 367, 126 L. Ed. 2d 295 (1993)).

In order to plead a *prima facie* case of hostile work environment claim, plaintiffs must show "that they were subjected to unwelcome harassment based on race or sex that affected a condition of employment." *Id.* (citing *Lauderdale*, 512 F.3d at 163). Harassment affects a condition of employment if the harassment is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* (quoting *Harris*, 510 U.S. at 21, 114 S. Ct. 367). Stated another way, the complained-of conduct must be "so severe and pervasive that it destroys a protected class member's opportunity to succeed in the work place." *Allard v. Holder*, 494 F. App'x 428, 432 (5th Cir. 2012) (quoting *Hockman v. Westward Commc'ns, LLC*, 407 F.3d 317, 326 (5th Cir. 2004) (quoting *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)).

"[O]nly 'extreme' conduct will be found sufficiently severe or pervasive. . . ." *Henry v. CorpCar Servs. Houston, Ltd.*, No. 13-20744, 2015 WL 327650, at *4 (5th Cir. Jan. 27, 2015), *reh'g denied* (Mar. 5, 2015), *cert. denied,* No. 14-1442, 2015 WL 3613977 (U.S. Oct. 5, 2015) (quoting *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S. Ct. 2275, 141 L. Ed. 2d 662 (1998)). When evaluating a hostile work environment claim, the Court will consider "'all the circumstances,' including the 'frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably

interferes with an employee's work performance.'" *Id*. (quoting *Harris,* 510 U.S. at 23, 114 S. Ct. 367).[12] This is a totality-of-the-circumstances inquiry that relies on "[c]ommon sense[ ] and an appropriate sensitivity to social context." *Id*. (citing *Oncale*, 523 U.S. at 81, 118 S. Ct. 998). The severity of harassment is evaluated by "considering whether a reasonable person in the plaintiff's position would find the work environment hostile or abusive." *Id*.

Hurley's allegation that negative evaluations and reprimands, all job-related criticisms, created a hostile work environment do not rise to the level necessary to establish her claim. *See Minnis v. Bd. of Sup'rs of Louisiana State Univ. & Agr. & Mech. Coll.*, No. 14-31251, 2015 WL 3941846, at *6 (5th Cir. June 29, 2015) (holding that employer's reprimands and negative performance evaluations were not sufficiently severe or pervasive to alter the conditions of employment and support a claim for abusive work environment); *see also Brown v. Liberty Mut. Grp., Inc.*, No. 14-10219, 2015 WL 1609141, at *3 (5th Cir. Apr. 10, 2015) (holding job-related criticisms [Plaintiff] complains of are unlikely to support a hostile work environment claim); *compare Lauderdale*, 512 F.3d at 164 (finding hostile work environment when supervisor called Plaintiff ten to fifteen times a night for almost four months, some calls carried sexual overtones, invited Plaintiff to "snuggle" in Las Vegas, physically pulled her to himself, and repeatedly requested to get coffee after work).

---

[12] The test for hostile or abusive environment from Title VII requires that the Plaintiff prove the following five elements in order to establish a claim:
> (1) She belongs to a protected group; (2) she was subjected to unwelcome harassment; (3) the harassment complained of was based on sex; (4) the harassment complained of affected a term, condition, or privilege of employment; and (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action.

*Matherne v. Ruba Mgmt.*, No. 14-30864, 2015 WL 5155624, at *3 (5th Cir. Sept. 3, 2015). The fifth element is only required if the alleged harasser is a supervisor. The "severe and pervasive" analysis is relevant to the fourth element.

Looking at "all the circumstances," Hurley has failed to establish a claim for hostile work environment, even if the Fifth Circuit explicitly recognized such a claim for relief under equal protection. *Henry*, 2015 WL 327650, at *4.

*Intentional Infliction of Emotional Distress*

In addition to her discrimination and hostile work environment claims, Hurley also brought a state law claim against individual defendants Rogers and Stark for intentional infliction of emotional distress. In Mississippi, a plaintiff can recover for emotional distress in the absence of physical injury "when the defendant's conduct evokes outrage or revulsion." *Klingler v. Univ. of S. Mississippi*, 612 F. App'x 222, 233 (5th Cir. 2015) (quoting *Gamble ex rel. Gamble v. Dollar Gen. Corp.*, 852 So. 2d 5, 11 (¶19) (Miss. 2003)). The complained of conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *McKinney v. Line Const. Ben. Fund*, No. 1:14-CV-066, 2015 WL 5692809, at *4 (N.D. Miss. Sept. 28, 2015) (quoting *Pegues v. Emerson Elec. Co.*, 913 F. Supp. 967, 982 (N.D. Miss. 1996)). Additionally, a plaintiff must show that the defendant "intentionally and maliciously" sought to do him or her harm. *Klingler*, 612 F. App'x at 233 (citing *Morgan v. Greenwaldt*, 786 So. 2d 1037, 1044 (¶23) (Miss. 2001)).

Claims "for intentional infliction of emotional distress will not ordinarily lie for mere employment disputes" and "[o]nly in the most unusual cases does the conduct move out of the realm of an ordinary employment dispute into the classification of extreme and outrageous, as required for the tort of intentional infliction of emotional distress." *Id.* (quoting *Lee v. Golden Triangle Planning & Dev. Dist., Inc.*, 797 So. 2d 845, 851 (Miss. 2001)); *see also Pegues*, 913 F. Supp. at 982.

Hurley has only alleged job-related conduct by Rogers and Stark, and has not alleged any conduct that arises to the level of "extreme and outrageous" as required to support her claim. *Id*. The Court finds that the alleged actions of Rogers and Stark were job-related and fall within the bounds of an ordinary employment dispute, and did not rise to the level of extreme and outrageous. *Id*. For these reasons, Hurley's claim for intentional infliction of emotional distress fails as a matter of law.

*Punitive Damages*

Finally, Hurley asserts a claim for punitive damages against Rogers and Stark in their individual capacities. Although such damages are recoverable against a defendant sued in their individual capacity, because the Court finds above that Hurley has failed to establish necessary elements of her claims, Defendants' motion for summary judgment as to punitive damages is also granted. *Gallentine v. Hous. Auth. of City of Port Arthur, Tex.*, 919 F. Supp. 2d 787, 815-16 (E.D. Tex. 2013) (citing *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 271, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981); *Sanders–Burns v. City of Plano,* 594 F. 3d 366, 373 (5th Cir. 2010)).

*Conclusion*

For all these reasons, the Court finds that the Plaintiff has failed to establish the necessary elements of her claims. Defendants' motion for summary judgment on all Plaintiff's claims is GRANTED. CASE CLOSED.

**SO ORDERED this the 22nd day of December, 2015.**

**/s/ Sharion Aycock**
**UNITED STATES DISTRICT JUDGE**